UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIST CHURCH OF THE GOSPEL
MINISTRIES d/b/a EVANGEL CHURCHES,

     Plaintiff,

                                          Case No. 2:19-11208
-vs-                                    Hon:  AVERN COHN

GUIDEONE MUTUAL INSURANCE
COMPANY

     Defendant.

_____/


**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DISMISSING THE CASE (ECF NO. 10)**

**I.      INTRODUCTION**

This is an insurance case. Plaintiff Christ Church of the Gospel d/b/a/ Evangel

Christian Churches ("Evangel Churches") has filed a claim against their insurance

provider, Guideone Mutual Insurance Company ("GMIC"), for breach of the commercial

insurance policy insured by GMIC.

GMIC has filed a motion for summary judgment asking the Court to decide that

Evangel Churches' loss is not covered by the policy, which is now before the Court

(ECF No. 10).

**II.     BACKGROUND FACTS**

GMIC provided insurance to Evangel Churches' property located in Roseville, Michigan, during the relevant time. (ECF No. 10-2). The policy provided coverage "for direct physical loss of, or damage to, "Covered Property" caused by or resulting from a "Covered Cause of Loss." Id.  In early March 2017, a contractor hired by Evangel Churches began work on replacing the roof of the building, which had undergone extensive repair in years prior.  During the replacement work, the contractor removed shingles from the roof, and utilized tarps to cover areas where the shingles had been removed and not yet replaced. (ECF No. 13-3). On or about March 7, 2017, during a storm, and perhaps at other times, the tarps blew off their position on the roof and/or were damaged.  As a result, water leaked into the interior of the building. Evangel Churches says the interior of the building and the personal property inside suffered extensive water damage.

The insurance claim is not in evidence. At oral argument, the parties suggested the claim was made over the phone. (See ECF No. 10-5). The record is void of the specifics of the damage. GMIC denied the claim, giving rise to this dispute. (ECF No. 13-6).

### III.    ANALYSIS

The policy expressly excludes coverage for interior water damage, unless the building first sustains damage by a "covered cause of loss."  The policy defines a "covered cause of loss" as a "risk of direct physical loss" unless the loss is excluded by the policy. See Ex. A, attached. In the definitions section, "specified causes of loss"

include in relevant part a windstorm, hail, or water damage[1]. Thus, the building would

have to first sustain direct physical loss from a windstorm, hail, or water damage in

order to be covered.

GMIC says the roof did not sustain <u>damage</u> by a "covered cause of loss."

Rather, exposed areas or openings in the roof created during replacement were

insufficiently covered by tarps.

The policy defines the term "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of
that property. All such loss of use shall be deemed to occur at the time of
the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss
of use shall be deemed to occur at the time of the "occurrence" that caused
it.

(ECF No. 13-15, PageID.588). Further, a court may establish the meaning of a term

used in an insurance policy through a dictionary definition. <u>Fitch v. State Farm Fire &</u>

<u>Cas. Co.</u>, 211 Mich. App. 468 (1995).  The dictionary definition of "damage" is: "physical

harm caused to something in such a way as to impair its value, usefulness, or normal

function." <u>See https://www.merriam-webster.com/dictionary/damage</u> (last visited

11/04/2019). Holes purposely created during a repair process does not fit the definition.

Courts that have interpreted similar policy provisions have found that intentionally

created holes that allow water into the building are not a "covered cause of loss." In <u>Oak</u>

---

[1] Water damage means accidental discharge or leakage of water or steam as the direct
result of the breaking apart or cracking of a plumbing, heating, air conditioning or other
system or appliance (other than a sump system including its related equipment and
parts), that is located on the described premises and contains water or steam. Water
damage also means accidental overflow of a baptistery. Ex. A.

Hill Inv. IV, LLC v. State Farm Fire & Cas. Co., 737 F. App'x 722, 724 (6th Cir. 2018) the

Court denied insurance coverage after a storm caused a debris backup in a drainage

pipe, which in turn caused water to leak into the interior of the building.  The policy

provision there was almost identical to the one in this case. The Court determined that

"[t]he limitation does not bar all water damage to the interior, but instead confines

coverage to a scenario when the exterior of the building was damaged in a way that

would let water into the building such as a puncture to the roof by a fallen tree branch."

See also Amish Connection, Inc. v. State Farm Fire & Cas. Co., 861 N.W.2d 230, 236

(Iowa 2015) ("[t]his exception would allow coverage, for example, if a tornado dropped a

tree on the roof, opening a hole through which rain entered").

In New Hampshire Ins. Co. v. Carter, 359 So. 2d 52 (Fla. Dist. Ct. App. 1978) the

court ruled that a roof which was partially covered with tarpaper was not "damaged" in a

storm. The insurer declined to extend coverage, relying upon a policy limitation that

excluded damage "caused by rain, snow, sand or dust, … unless the building containing

the property covered shall first sustain actual damage to roof or walls by the direct force

of the wind or hail [.]" Id. The court explained that since there was no allegation that the

home sustained any "actual damage" to its roof or walls and that the rain leaked through

the roof only because the insureds had removed the shingles, there was no coverage.

Id.

Evangel Churches relies on Dewsnup v. Farmers Ins. Co. of Oregon, 239 P.3d

493, 497 (2010). There, the plaintiff removed the entire layer of wood shakes from the

roof, leaving only the plywood sublayer, and then covered the plywood with

polyethylene sheeting.  A storm caused the sheeting to blow away, and water entered

the interior of the building, damaging the plaintiff's personal property. The dispute between the parties was whether the polyethylene sheeting was a "roof" under the policy. The court found that it was because the polyethylene sheeting was secured in a way that "would have been adequate to protect [plaintiffs'] home for one or two years if necessary, under normal circumstances." Id. at 494. Here, Evangel Churches did not replace the entire roof with sheeting amounting to a long-term roof replacement.

More importantly, the Court has declined to determine if the way in which the roof was covered by the tarps constituted a "roof" as defined under the policy. Rather, the Court has determined that the creation of intentional holes do not constitute "damage" to the building as to be considered a "covered cause of loss" under the policy.

Evangel Churches argues that the cause of loss is a question of fact for the jury, and the building sustained direct damage to the roof from wind and snow storms, which in turn allowed water to get inside.  In support of the argument, Evangel Churches' says that the lead pastor of the church "had testified and also averred that as a result of wind and snow storms, water entered the interior of the building through the roof and the walls, damaging the Building's interior and the personal property." (ECF No. 13). The pastor testified to the following:

> Q: [the contractor] was in the process of replacing [the roof] when that water started leaking - the rain started leaking into the sanctuary?
> A: Yes.
> Q: And do you remember what you saw being done or what was done before the rain started coming in?
> A: It was unroofed.
> Q: How much of it was unroofed?
> A: I don't remember, but he had to take the shingles off.
> ***

> Q: Okay. He had started taking the shingles off before the rain started coming in though?
> A: Yes.
> ***
> Q: And you described what you saw when you went inside and then you called [the contractor]. Now, he responded and his first thing he tried to do was arrange the tarps to stop water from getting in?
> A: Yeah.
> Q: Did that stop the water from getting in?
> A: Right then and there that time.
> Q: Okay. And then what happened after that? You said tarps blew off?
> A: Yeah, they kept—
> Q: He had to keep replacing the tarps?
> A: Yes.

(ECF No. 13-2). The pastor also averred, "on March 7, 2017, [the contractor] began replacing the building's prior roof. Between March 7, 2017, and May 25, 2017, it rained and snowed about 18 times. As a result, water entered the building's roof and four walls. As a result, water entered the building's interior and damaged it, including the interior walls, drywall, carpet, tile, pews, contents and personal property, the chandeliers, and other light fixtures. (ECF No. 13-4).

Thus, the record does not support a finding that wind or rain storms caused damage to the roof, which allowed water to leak in. Rather, that the repairs being done on the roof caused water to enter. The rain and snow storms were the source of the water that caused the interior damage to the building but were not a cause of "damage" to the roof.

Finally, Evangel Churches says the Court should not grant summary judgment while discovery is still ongoing. However, it has not pointed to any specific facts that additional discovery would demonstrate or support the claim. See Lacy v. Bentsen, 859 F. Supp. 1039 (E.D. Mich. 1993).

## IV.     CONCLUSION

For the reasons stated above, GMIC's motion for summary judgment is GRANTED, and the case is DISMISSED.



SO ORDERED.


                                                **s/Avern Cohn**
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE


Dated: November 19, 2019